UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA

    - v. -                   :     INDICTMENT

RONALD PETEKA,               :     07 Cr. ___

            Defendant.   **07 CRIM. 826**

- - - - - - - - - - - - - - - - - - - - - -x

*JUDGE SWAIN*

AUG 30 2007

COUNT ONE

(Conspiracy)

The Grand Jury charges:

Background

1.   At all times relevant to this Indictment, Morgan Stanley & Co. ("Morgan Stanley" or "Morgan"), was a company with offices in New York, New York.  Among other services, through its Prime Brokerage Division ("Prime Brokerage"), Morgan Stanley provided financial and administrative services to numerous hedge funds.  Morgan Stanley competes with other companies for hedge fund business in this area.

2.   At various times relevant to this Indictment, a co-conspirator not named as a defendant herein ("CC-1"), was employed as a consultant by Morgan in Morgan's Information Technology Department.  In or about December 2000, Morgan assigned CC-1 to Prime Brokerage where he was responsible for establishing secure computer connections between Morgan and hedge

1

fund clients and third parties who were authorized to receive that information by hedge fund clients.  In addition, CC-1 was assigned "help desk" duties to assist hedge fund clients in the event they were having difficulty accessing data on Morgan's computers which they were entitled to access.

3.    In its computer databases, Morgan Stanley maintains numerous confidential and proprietary documents.  These include a list of Morgan's Prime Brokerage hedge fund clients and the formulas used to calculate rates paid by these clients to Morgan for Prime Brokerage services.  Morgan terms this list the "Client Rates, All Clients List" (hereafter referred to as the "Client Rates List").  This list is updated by Morgan on a periodic basis, and in printed format, is typically over 100 pages in length.  The bottom of each page of the Client Rate List bears the notation "CONFIDENTIAL."  Information in the Client Rate List would be highly valuable to competitors of Morgan. That is because the list sets forth the rates that Morgan charges to each hedge fund with regard to the client's debits, credits, short positions, etc., because each type of transaction typically has a separate negotiated rate.

4.    Morgan Stanley maintains the Client Rates List and other confidential and proprietary business documents in electronic format in databases located on computer servers in Brooklyn, Manhattan, and New Jersey.

5.    Because the Client Rates List is highly valuable and is not generally known to, or readily ascertainable through proper means by, members of the public, Morgan expends significant amounts of time, money, and effort to safeguard the Client Rates List.  For example, the computer servers on which this data resides are separate servers from Morgan's other computer servers.  In addition, Morgan routinely requires Prime Brokerage employees and consultants to undergo training regarding confidentiality aspects of Morgan's business.  Furthermore, Morgan officials frequently send out mass e-mails to employees and consultants reminding them of best practices regarding the protection of confidential information belonging to Morgan and Morgan clients.

6.    At various times relevant to this Indictment, RONALD PETEKA, the defendant, was employed by a company located in Midtown Manhattan (the "Midtown Company") which is in the business of, among other things, negotiating on behalf of hedge funds the rates that hedge funds pay to Morgan (and competitors of Morgan) for prime brokerage services.  The Midtown Company has earned revenue from its clients by negotiating lower fee rates than what the hedge fund clients otherwise would have been required to pay to companies such as Morgan for prime brokerage services.  Accordingly, Morgan's rate data described above, if obtained by persons at the Midtown Company, could enable the

Midtown Company to earn revenue at the expense of Morgan.

7.    From on or about September 15, 1997, to on or about May 4, 2005, RONALD PETEKA, the defendant, was employed as, among other things, a Prime Brokerage client service representative at Morgan Stanley.  On or about May 4, 2005, PETEKA left Morgan Stanley and went to work for the Midtown Company.

## THE CONSPIRACY

8.    From at least in or about December 2005, up to and including in or about February 2006, in the Southern District of New York and elsewhere, RONALD PETEKA, the defendant, CC-1, and others known and unknown (collectively, the "co-conspirators"), unlawfully, willfully, and knowingly combined, conspired, confederated and agreed together and with each other to violate the laws of the United States, to wit, to violate Title 18, United States Code, Sections 2314 and 1030(a)(2)(C).

## OBJECTS OF THE CONSPIRACY

### Interstate Transportation of Stolen Property

9.    It was a part and object of this conspiracy that RONALD PETEKA, the defendant, together with his co-conspirators, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer in interstate and foreign commerce goods, wares, and merchandise having a value of $5,000 and more, to wit, confidential and proprietary business documents belonging to

Morgan Stanley & Co., Inc., knowing such goods, wares, and merchandise to have been stolen, converted, and taken by fraud, in violation of Title 18, United States Code, Section 2314.

<u>Unauthorized Computer Access</u>

10.    It was a further part and object of said conspiracy that RONALD PETEKA, the defendant, together with his co-conspirators, unlawfully, knowingly, and intentionally, in conduct involving an interstate and foreign communication, would and did access a protected computer without authorization and exceed authorized access, and thereby obtained information from such protected computer, in violation of Title 18, United States Code, Section 1030(a)(2)(C).

<u>Means and Methods of the Conspiracy</u>

11.    Among the means and methods used by RONALD PETEKA, the defendant, and his co-conspirators to achieve the objects of the conspiracy were the following:

a.    CC-1, at the direction of RONALD PETEKA, the defendant, routinely accessed databases of Morgan Stanley in order to obtain confidential and proprietary documents belonging to Morgan Stanley; and

b.    CC-1 transmitted certain of those confidential and proprietary documents as attachments to e-mails that he sent from his work e-mail account at Morgan to his personal e-mail account at America OnLine ("AOL"), in Virginia,

and to PETEKA.

Overt Acts

12.    In furtherance of said conspiracy and to effect
the illegal objects thereof, the following overt acts, among
others, were committed in the Southern District of New York:

a.    On or about December 12, 2005, RONALD PETEKA,
the defendant, sent Morgan Stanley's Client Rate List from his e-
mail account at the Midtown Company to a personal e-mail account
controlled by him.

b.    On or about December 21, 2005, CC-1 sent an
e-mail to PETEKA from Morgan's offices in New York, New York,
containing an attachment that appeared to be a business proposal,
noting that "[h]edge [f]unds pay millions annually to its [p]rime
[b]rokers," and that "[w]ith our extensive list of contacts,
lenders, and suppliers, we make sure that you will receive the
best price and execution on the financing side."  The proposal
stressed that "we make sure the [p]rime brokers work twice as hard
for half the revenue."  CC-1 noted in the e-mail that he "made the
adj[ustment] on the last page" of the business proposal and would
"review more tonight."

c.    On or about December 30, 2005, PETEKA sent an
e-mail to CC-1's AOL e-mail address, which CC-1 forwarded to his
e-mail account at Morgan, in New York, New York, in which PETEKA
informed CC-1 that he was "going to approach" certain

6

"billionaire" managers of a hedge fund about working for them and in which he asked CC-1 for certain confidential Prime Brokerage data.  In addition, in that e-mail CC-1 cautioned CC-1 to "[b]e very careful."

d.    On or about January 12, 2006, PETEKA sent Morgan Stanley's Client Rate List from his e-mail account at the Midtown Company to a personal e-mail account controlled by him.

e.    On or about various dates in January 2006, CC-1 sent e-mails from CC-1's e-mail account at Morgan's offices in New York, New York to PETEKA at PETEKA's e-mail account at the Midtown Company which attached Morgan confidential and proprietary financial hedge fund client data.

f.    On or about February 10, 2006, PETEKA sent Morgan's Client Rate List from his e-mail account at the Midtown Company to a personal e-mail account controlled by him.

(Title 18, United States Code, Section 371.)

COUNT TWO

(Transportation of Stolen Property In Interstate Commerce)

The Grand Jury further charges:

13.    The allegations of paragraphs 1 through 7, 11, and 12 of this Indictment are repeated and realleged as though fully set forth herein.

14.    From in or about December 2005, to in or about February 2006, in the Southern District of New York and

7

elsewhere, RONALD PETEKA, the defendant, unlawfully, willfully, and knowingly would and did transport, transmit, and transfer in interstate and foreign commerce goods, wares, and merchandise having a value of $5,000 and more, to wit, confidential and proprietary business documents belonging to Morgan Stanley & Co., Inc., knowing such goods, wares, and merchandise to have been stolen, converted, and taken by fraud.

(Title 18, United States Code, Sections 2314 and 2.)

COUNT THREE

(Unauthorized Computer Access)

The Grand Jury further charges:

15.   The allegations of paragraphs 1 through 7, 11, and 12 of this Indictment are repeated and realleged as though fully set forth herein.

16.   In or about February 2006, in the Southern District of New York and elsewhere, RONALD PETEKA, the defendant, unlawfully, knowingly, and intentionally, in conduct involving an interstate and foreign communication, accessed a protected computer without authorization and exceeded authorized access, and thereby obtained information from such protected computers, to wit, PETEKA aided, abetted, counseled, and induced CC-1 to access computers owned and maintained by Morgan Stanley & Co., Inc., in New York, New York; obtain confidential and proprietary business information relating to Morgan's Prime Brokerage

8

business; and transmit that business information to CC-1's

personal e-mail account at America OnLine in Virginia and to

PETEKA.

(Title 18, United States Code, Sections 1030(a)(2)(C) and 2.)


_____
FOREPERSON

Michael J. Garcia
_____
MICHAEL J. GARCIA
United States Attorney

9

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

### UNITED STATES

### -v.-

### RONALD PETEKA

### INDICTMENT

MICHAEL J. GARCIA
United States Attorney.

18 U.S.C. § 371, 2314, 1030(a)(2)(C), 2